# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

    v.

Devin Delbert Donald Blom (1), and
Michelle Margaret Blom (2),

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 21-20 ADM/DTS

---

Andrew S. Dunne and Lauren Olivia Roso, Assistant United States Attorneys, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Lauren Campoli, Esq., The Law Office of Lauren Campoli, PLLC, Minneapolis, MN, on behalf of Defendant Devin Delbert Donald Blom.

Michael W. McDonald, Esq., Prior Lake, MN, on behalf of Defendant Michelle Margaret Blom.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Devin Delbert Donald Blom's ("Devin") Objection [Docket No. 127] and Defendant Michelle Margaret Blom's ("Michelle") Objection [Docket No. 126] to Magistrate Judge David T. Schultz's October 22, 2021 Report and Recommendation [Docket No. 125] ("R&R").[1]  In the R&R, Judge Schultz recommends granting Devin's Motion to Suppress Statements [Docket No. 40], denying Devin and Michelle's Motions to Suppress Evidence [Docket Nos. 41, 49] and denying as moot Michelle's Motion to Suppress Statements [Docket No. 51].  Devin also objects to Judge Schultz's October 22, 2021 Order [Docket No. 124] ("Pretrial Order") denying Devin's Motion for Leave to File a Motion to Dismiss for Lack of Chain of Custody [Docket No. 93].

---

[1] For ease of reference, Devin and Michelle Blom are referred to by their first names.

After a de novo review of the record, and for the reasons stated below, the Objections are overruled.

## II.  BACKGROUND

Devin and Michelle are each charged with one count of conspiracy to distribute methamphetamine and one count of aiding and abetting possession with the intent to distribute methamphetamine.  Indictment [Docket No. 1].  They move to suppress evidence found in an August 12, 2020 search of their home, and also to suppress statements they made after they were arrested.

At the time law enforcement searched their home, Devin and Michelle were both under supervision of Minnesota Department of Corrections ("DOC") for state court convictions.  Their release and probation conditions included a requirement that they submit to a search of their person, residence, vehicle, and property.  Gov't Ex. 1 at 1–2; Gov't Ex. 4 at 1, 3.

The August 12 search was initiated by Devin's supervising corrections officer, Agent Christopher Vierzba ("Agent Vierzba").  Earlier that day, one of Agent Vierzba's colleagues, Chris Salazar ("Agent Salazar"), told him that a parolee under Agent Salazar's supervision had exchanged text messages and a photo of suspected methamphetamine from a contact named "Blom."  Tr. [Docket No. 119] at 23–24; Gov't Ex. 3.  Agent Salazar spoke with Agent Vierzba by phone and told him that the text messages and photo had been exchanged a few days earlier.  Tr. at 26–27, 85.  Agent Vierzba relayed the information to his supervisor, who authorized a search of Devin's apartment and vehicles pursuant to Devin's release conditions.  Id. at 28–30.

Agent Vierzba then contacted the Meeker County Sheriff Department's drug task force to request assistance with the search.  Id. at 29.  Task force Agent Ryan Schutz ("Agent Schutz")

2

told Agent Vierzba he would meet him at Devin's residence.  Id. at 29, 96.  Agent Vierzba also contacted the Litchfield Police Department and asked officers to assist by watching Devin during the search.  Id. at 30, 35, 58–59.

Devin was home alone when Agent Vierzba and two Litchfield police officers arrived to search his home.  Id. at 31.  Soon after he began searching, Agent Vierzba found a key to a Taurus handgun, which raised the possibility that a gun was in the apartment.  Id. at 35.  He directed the police officers to place Devin in handcuffs as a safety measure.  Id.

The two police officers remained in the room with Devin while the search was conducted.  The officers wore body cameras that were activated during the search.  Def. Exs. M, N.  Footage from the body camera videos show that while the officers stood watch over Devin, they occasionally commented on the expensive television and designer bags in the apartment and asked him about the car he drives.  Id.

Agent Schutz arrived as Agent Vierzba was searching a small back bedroom.  Id. at 36, 99.  He joined Agent Vierzba in the room and began searching a different side of the room.  Id. Agent Schutz found a cloth handbag between a wall and a dresser.  Id. at 37, 99–100.  The handbag was empty except for a dusting of white crystal-like substance at the bottom.  Id. at 37, 64, 100.  Agent Schutz told Agent Vierzba what he had found, placed the handbag on the bed, and retrieved his field test kit from outside.  Id. at 37, 100–01.  Agent Schutz performed a chemical test on the substance, which tested positive for methamphetamine.  Id. at 38–39, 102. He then placed the handbag back where he found it so that photos could be taken showing where the handbag was found.  Id. at 103–04, 127–28, 173.  In another bedroom, Agent Vierzba found a YETI cup containing marijuana and a pipe.  Id. at 39.  Agents Vierzba and Schutz were not

wearing body cameras during the search, because body cameras are not issued to corrections agents or drug task force members.  Id. at 55, 112.

Based on the finding of suspected methamphetamine, officers placed Devin under arrest for Fifth Degree Possession of a Controlled Substance.  Id. at 104.  Soon after, Michelle arrived home and was also arrested.  Id. at 106–07.  The purse she was carrying when she was arrested contained approximately $72,000 in cash.  Id.

Officers conducted a canine sniff around the three vehicles parked outside the residence, and the canine alerted to a Ram truck.  Id. at 40–41, 108.  Agent Schutz then obtained a search warrant to further search the apartment and the three vehicles.  Id. at 40–42, 104, 110.  In the Ram truck, officers found duffel bags with methamphetamine, a digital scale, nine vacuum-sealed bags of marijuana, and 140 THC cartridges.  Id. at 42; Gov't Ex. 2 at 0074.

After Devin's arrest, officers conducted a custodial interview with him at the Meeker County Jail.  Gov't Ex. 6.  Devin was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and stated that he did not wish to speak with the officers.  Id.  He then asked what he was being charged with.  After the charges were explained, Devin said, "huh" and "okay."  Id. The officers then asked Devin whether his "DNA [was] gonna be on there," and why Michelle had "$71,000 in cash on her."  Id.  Devin answered, "Because she cashed money out her 401K?" Id.

Devin and Michelle have each moved to suppress evidence from the searches of their apartment and vehicles.  Michelle also moved to suppress post-arrest statements she made about the money in her purse, and Devin moved to suppress the statements he made at the Meeker County Jail.  In addition to the suppression motions, Devin and Michelle filed motions for leave

4

to file motions to dismiss for lack of chain of custody [Docket Nos. 93, 95].  They argued that

the Government's allegedly late disclosures provided good cause to modify the scheduling order

so the motions could be filed.  Id.

   The R&R recommends denying Defendants' motions to suppress evidence because the

search of their apartment and vehicles was lawfully based on Defendants' search conditions and

a valid warrant.  The R&R also recommends denying as moot Michelle's motion to suppress

statements because the Government has stated that it does not intend to use Michelle's

statements at trial.  The R&R further recommends granting Devin's motion to suppress the

statements he made at the Meeker County Jail.

   Defendants' motions for leave to file motions to dismiss were denied in the Pretrial

Order.  Pretrial Order at 2–3.  Judge Schultz found that Defendants did not identify which, if

any, late disclosures provided good cause to file the motions to dismiss.  He further held that the

record did not warrant a dispositive motion on the chain of custody issue, and that "Defendants

may direct a motion in limine to the district judge who will preside at trial regarding the

admissibility of any evidence."  Id. at 3.

   Both Defendants have filed objections to the R&R.  Devin also objects to the Pretrial

Order.

## III.  DISCUSSION

### A.  Standard of Review

   A district judge may refer a defendant's motion to suppress evidence to a magistrate

judge for recommendation.  Fed. R. Crim. P. 59(b)(1).  The district judge must make an

independent, de novo determination of those portions of the report and recommendation to which

a party objects.  Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1); D. Minn. L.R. 72.2(b)(3).

## B.  Devin's Objections

### 1.  Leave to File Motion to Dismiss

Devin first objects to the Pretrial Order's denial of his motion for leave to file a motion to dismiss for lack of chain of custody.  He argues that the Government should not benefit from its allegedly late disclosures of evidence favorable to him, and that the Court should hear and grant his motion for dismissal.  This objection is overruled because the Court agrees with the finding in the Pretrial Order that "nothing in the record warrant[s] a dispositive motion on the chain of custody issue."  Pretrial Order at 3.  Additionally, to the extent that Devin challenges the admissibility of evidence based on chain of custody, the challenge may be raised at trial.

### 2.  Warrantless Search

Next, Devin objects to the R&R's conclusion that the warrantless search of the residence was reasonable.  A probationer's expectation of privacy is "significantly diminished" when their probation is conditioned on a search provision.  United States v. Knights, 534 U.S. 112, 119–20 (2001).  "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."  Id. at 121.  Under such circumstances, "a warrant requirement [is] unnecessary."  Id.

Here, the R&R correctly determined that the warrantless search was authorized under the Defendants' release and probation conditions.  Defendants' release conditions required them to submit to searches of their residence and vehicles as directed by their probation officers.  Gov't

6

Ex. 1 at 2; Gov't Ex. 4 at 3.  The R&R also properly concluded that the search was supported by reasonable suspicion, because Agent Vierzba had been informed by a colleague that Devin and another probationer had recently exchanged text messages and a photo of methamphetamine. Under the totality of the circumstances, the search of Defendants' apartment was reasonable under the Fourth Amendment.

### 3.  Validity of Search Warrant

Devin also objects to the conclusion in the R&R that the search warrant was valid.  He argues that Agent Schutz's search warrant affidavit included knowingly false statements and material omissions, and that the search warrant should be declared invalid or a hearing should be held pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

To be entitled to a Franks hearing, a defendant must make "a substantial preliminary showing" not only that the affidavit contained false information, but that the inaccuracies were the result of "deliberate falsehood or reckless disregard for the truth" and were "necessary to the finding of probable cause."  Franks, 438 U.S. at 55-56, 171.

Devin contends that Agent Schutz's statement in the search warrant affidavit that he found a handbag containing a substance that field tested positive for methamphetamine is "wholly incredible, factually preposterous, and inconsistent with the video evidence."  Obj. at 2. Devin argues that Agent Schutz's testimony is not believable because Agent Vierzba had already searched the bedroom and did not find the handbag, Agent Vierzba did not witness Agent Schutz locate the handbag even though the two agents were together in the small bedroom when the bag was found, and neither agent documented the finding by photographing the handbag the moment it was found.

These arguments were addressed by Judge Schultz in the Pretrial Order, which states that the bodycam videos and photo evidence "are not inconsistent with, and do not undermine, Agent Schutz's statement in the search warrant application that he found a bag containing meth in the residence." Pretrial Order at 5. Judge Schultz thus concluded that Devin's arguments "fall far short of a 'substantial preliminary showing' for a <u>Franks</u> hearing." <u>Id.</u> This Court has conducted a <u>de novo</u> review of the record, including the bodycam videos and photo evidence. The Court agrees with Judge Schultz's conclusion that a <u>Franks</u> hearing is not warranted.

Devin also argues that the search warrant lacked probable cause. Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." <u>United States v. Tellez</u>, 217 F.3d 547, 549 (8th Cir. 2000). "When the issuing judge relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." <u>United States v. O'Dell</u>, 766 F.3d 870, 874 (8th Cir. 2014).

Here, the search warrant affidavit stated that: the drug task force had received information in 2020 that Devin was possibly selling large amounts of meth; Agent Vierzba was informed that Devin had sent photos of suspected methamphetamine to another individual on supervised release; Agent Schutz searched a bedroom in Devin's apartment and found a handbag with a white crystal-like substance inside that tested positive for methamphetamine; Agent Schutz saw multiple expensive items in the residence, including "computers, tvs, sunglasses, bags, and other items;" a drug detecting dog alerted to a Ram truck in Devin's driveway; and Michelle had approximately $60,000 in the purse she was carrying when she was arrested.

8

Gov't Ex. 2 at 0067–68.  Id.  The R&R correctly concluded that the totality of these

circumstances "provided a substantial basis for the judge to conclude that probable cause existed

to believe that a search of Devin and Michelle's residence, vehicles, and property would uncover

evidence of a crime."  R&R at 19.

### 4. Motion to Suppress Statements

Although the R&R recommends granting Devin's motion to suppress statements, Devin

objects that the R&R failed to consider whether the statements he made before he was formally

arrested should be suppressed.

The scope of the statements Devin seeks to suppress has expanded since he filed his

motion.  Devin's motion references only the post-arrest statements that he made after receiving a

Miranda warning and invoking his right to remain silent.  See Mot. Suppress Statements [Docket

No. 40] at 1.  Devin's memorandum filed after the motion hearing references his pre-arrest

statements, but provides no legal argument for why they should be suppressed.  See

Post-Hearing Mem. [Docket No. 118] at 4, 8, 30.  Instead, the last line of the 30-page

memorandum simply states, "Mr. Blom asserts he was interrogated on scene while handcuffed,

and without the benefit of a Miranda warning, and will rest on the record with respect to this

argument."  Id. at 30.

The R&R conducted a thorough analysis of Devin's post-arrest statements and

recommends granting his motion to suppress statements.  Devin argues that the Miranda

violation occurred well before he was formally arrested because during the search he was

handcuffed and not free to leave, and the Litchfield police officers asked him questions designed

to elicit an incriminating response.  Devin's objection includes a legal argument for why the

statements should not be admitted.

The Government has not directly responded to this portion of Devin's objection, and the issue of Devin's pre-arrest statements was not addressed in the R&R.  The Court will assume that the Government does not intend to use the statements Devin made while he was handcuffed during the search.  If the case goes to trial and the Government elects to use the statements, an evidentiary hearing will be held.

**C.  Michelle's Objection**

Michelle objects to the conclusion in the R&R that the search warrant was supported by probable cause.  For the reasons discussed above, the R&R properly concluded that the search warrant was supported by probable cause.  Accordingly, Michelle's Objection is overruled.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant Devin Delbert Donald Blom's Objection [Docket No. 127] to Magistrate Judge David T. Schultz's October 22, 2021 Report and Recommendation [Docket No. 125] and Judge Schultz's October 22, 2021 Pre-trial Order [Docket No. 124] is **OVERRULED;**

2.  Defendant Michelle Margaret Blom's Objection [Docket No. 126] to the Report and Recommendation is **OVERRULED**;

3.  The Report and Recommendation [Docket No. 125] is **ADOPTED**;

4.  The October 22, 2021 Pre-trial Order [Docket No. 124] is **AFFIRMED**;

5.  Devin Blom's Motion to Suppress Statements [Docket No. 40] is **GRANTED**;

6.  Devin Blom's Motion to Suppress Evidence [Docket No. 41] is **DENIED**;

7.  Michelle Blom's Motion to Suppress Evidence [Docket No. 49] is **DENIED**; and

8.      Michelle Blom's Motion to Suppress Statements [Docket No. 51] is **DENIED AS MOOT**.

BY THE COURT:


\_\_\_\_\_s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  December 7, 2021